UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 21-179** |
| **GLENN E. DIAZ**<br>**PETER J. "PETE" JENEVEIN**<br>**MARK S. GRELLE** | **SECTION "H"** |

### ORDER AND REASONS

Before the Court are the Government's Motion in Limine (Doc. 122) and the Government's Motion to Exclude Defendant Glenn E. Diaz's Expert Witnesses (Doc. 124). Oral argument was held on March 29, 2023. For the following reasons, the Motion in Limine is **DENIED** without prejudice, and the Motion to Exclude Glenn E. Diaz's Expert Witnesses is **DENIED IN PART** and **DEFERRED IN PART**.

### BACKGROUND

Defendants Glenn E. Diaz, Peter J. "Pete" Jenevein, and Mark S. Grelle are charged in a thirty-one-count superseding indictment with conspiracy to commit bank fraud, conspiracy to commit money laundering, and bank fraud related to interactions with First NBC Bank ("FNBC" or "the Bank").[1] Trial is

---

[1] Doc. 98. Diaz and Jenevein are charged in each of the 31 counts of the superseding indictment, and Grelle is charged in 20 of the counts. Count 1 charges all three defendants with conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. In Count 2, Diaz, Jenevein, and Grelle are charged with conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). In Counts 3 through 31, Diaz and Jenevein are charged with bank fraud, in violation of 18 U.S.C. § 1344, and Grelle is also charged in Counts 3 to 6, 11, 14, 15, 18 to 25, and 28 to 30.

1

set to begin on April 17, 2023. The Government moves to exclude certain evidence and argument from trial, including the testimony of Defendant Diaz's two expert witnesses. The Court will address each of the Government's requests in turn.

## LAW AND ANALYSIS

### A. Government's Motion in Limine

The Government's Motion in Limine seeks to exclude nine categories of argument and evidence from trial regarding: (1) consequences of conviction; (2) Defendants' good character; (3) Defendants' own hearsay statements; (4) interview reports authored by law enforcement agents; (5) selective prosecution; (6) negligence of First NBC ("FNBC" or "the Bank"), the Bank's board of directors, FDIC examiners, or external auditors; (7) Defendants' intent to ultimately remedy the Bank's losses; (8) other bank officers convicted of fraud; and (9) other FNBC bank borrowers.

Having reviewed the briefing and applicable law, the Court finds that the Government's Motion is premature. The Government's requests "are overbroad in scope and do not take into consideration the nuances of potential evidentiary uses, such as for the purpose of cross-examination, which might render the challenged evidence or arguments admissible *in situ*."[2] Accordingly, the Government's Motion is hereby **DENIED** without prejudice, to be re-urged at trial if necessary.

### B. Government's Motion to Exclude Defendant Diaz's Expert Witnesses

The Government also seeks to exclude Defendant Diaz's two expert witnesses: David Gibbons and Michael Weldon. The admissibility of expert

---

[2] United States v. Ryan, No. 20-cr-65, Doc. 850 (E.D. La. Dec. 12, 2023).

testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*,[3] and *Kumho Tire Co. v. Carmichael*.[4] The threshold inquiry is whether the expert possesses the requisite qualifications to render opinion on a particular subject matter.[5] Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[6] In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system and the role of the finder of fact within that system.[7] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[8] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[9]

---

[3] 509 U.S. 579 (1993).
[4] 526 U.S. 137 (1999).
[5] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[6] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).
[7] *See Daubert*, 509 U.S. at 596.
[8] *Id.*
[9] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

3

### 1. David Gibbons

Defendant Diaz has proposed David Gibbons as an expert in "Bank Supervision, Regulation and Enforcement and Credit and Risk Management."[10] Diaz seeks to have Gibbons offer the following opinions: (1) explanation of banking terminology; (2) FNBC, FDIC, and SBN did not handle Diaz's loans properly; (3) FNBC failed to administer Diaz's loans in a manner that was in the best interests of the Bank and Diaz; (4) FNBC's unsafe and unsound lending, credit administration, and collection practices compounded Diaz's debt levels and his inability to repay from sources other than asset sales; (5) FNBC's unsafe and unsound lending fostered Diaz's use of loan proceeds for personal purposes; (6) FNBC did not enforce its June 2, 2016 e-mail Instructions from Bill Bennett to Diaz; (7) FNBC did not rely on Diaz's Florida real estate for repayment; (8) emails from Bill Bennett did not constitute a change to Diaz's loan terms; (9) FNBC condoned Diaz's borrowing behavior; and (10) Master Note Confusion/Enforceability.

The Government does not dispute that Gibbons is qualified to offer expert opinions in the fields of bank supervision, regulation, and enforcement and credit and risk management. Instead, the Government argues that Gibbons's testimony fails under Rule 702 because he does not provide any basis to test the reliability of his opinions. Specifically, the Government challenges the reliability of Gibbons's testimony because his analysis does not list the documents he relied on, explain the basis for his opinions, or cite reference materials, such as authoritative text or banking standards.

Under Rule 702, a witness may be qualified as an expert based on "knowledge, skill, experience, training, or education." The Fifth Circuit has stated that "experience in the field can be the predominant, if not the sole,

---

[10] Doc. 124-2.

4

basis for expert testimony in some cases."[11] Gibbons has worked in the banking and financial services industries for more than 46 years. He previously worked for the Office of the Comptroller of Currency ("OCC") and HSBC Holdings, after which he began consulting and advising financial institutions on risk management. Since August 2016, he has operated his own company, David D. Gibbons & Company, LLC, where he provides consulting, advice, and testifying and consulting witness services in "Banking, Bank Supervision, Regulation and Enforcement, Credit and Credit Risk Management, Enterprise Risk Management, Governance, Independent Risk Review, and Regulatory Relations."[12] Further, Gibbons' publications attached to his report display his knowledge of guidelines and rules promulgated by the OCC and the Federal Reserve Board of Governors.[13]

In reaching his conclusions, the "method" relied upon by Gibbons is the application of his extensive experience and knowledge to the facts of this case. The reliability of Gibbons' conclusions can readily be evaluated without elaborate explanation due to his familiarity with the subject matter. Accordingly, the Court finds that the combination of Gibbons' experience and knowledge form a sufficiently reliable basis upon which to rest his conclusions. The Government's concerns regarding how Gibbons reliably applied his experience to the facts of this case may be addressed on cross-examination.

The Government also attacks the relevance of Gibbons' opinions. However, the admissibility of Gibbons' opinions will be contingent on the evidence elicited at trial. Accordingly, the Court **DEFERS** ruling on relevance and the scope of admissible testimony.

---

[11] United States v. Haines, 803 F.3d 713, 727 (5th Cir. 2015).
[12] *Id.* at 12.
[13] *See* Doc. 124-2 at 21–22, 30–37, 38–43.

## 2. Michael Weldon

Defendant Diaz has proposed Michael Weldon as an expert in forensic document examination to opine on the authenticity of Diaz's signature on certain loan disbursement documents and change of terms agreements. At the outset, this Court finds that Weldon is qualified to offer opinions in the area of forensic document examination, in light of his more than 26 years of experience and certification by the American Board of Forensic Document Examiners.

Next, the Court finds Weldon's testimony to be sufficiently reliable. Based on the methods and protocols outlined by the Scientific Working Group Documents ("SWGDOC") of the American Academy of Forensic Sciences, Weldon examined eleven "questioned documents" and compared them to fifteen "known documents."[14] The "known documents" were reported to Weldon as containing the known writing of Defendant Diaz. Weldon's report explains that the signatures on Documents Q-1, Q-2, Q-3, Q-4, Q-5, and Q-6 contain elements that do not appear in Diaz's known signatures, and he points to those elements on various demonstratives.

The Government does not dispute that the SWGDOC provides a generally accepted methodology for forensic document examination. Rather, the Government argues that Weldon's analysis is unreliable because it does not follow the protocols upon which he purportedly relied. Specifically, the SWGDOC provides specific terms that should be used to reflect conclusions of varying degrees of certainty. Because Weldon does not use these terms in his analysis, the Government contends that he does not actually offer an expert opinion at all. Instead, the Government maintains that Weldon offers "several superficial observations about the various signatures, noting where he saw

---

[14] Doc. 124-3 at 2.

6

inconsistencies."[15] This Court disagrees. Courts routinely allow experts to testify about similarities and differences between a challenged document and a known exemplar, without expressing an ultimate conclusion on authorship of the challenged document.[16]

The Government also contends that Weldon's analysis is unreliable because he does not explain his basis for identifying certain signatures as "known" or "questioned." A review of Weldon's report and demonstratives, however, reveals otherwise. Six of the known documents are authentic acts signed by a notary and two witnesses. To attack the validity of an authentic act, the Government must provide proof that is "strong and convincing in order to overcome the presumption of validity."[17] The Government offers no basis for attacking the validity of these authentic acts.

Finally, the Court will defer ruling on the Government's challenges to relevance. Ultimately, the admissibility of Weldon's opinions will be contingent on the evidence elicited at trial. Accordingly, the Court **DEFERS** ruling on relevance and the scope of admissible testimony.

## CONCLUSION

For the foregoing reasons, the Government's Motion in Limine (Doc. 122) is **DENIED** without prejudice, and the Government's Motion to Exclude

---

[15] Doc. 124-1 at 24.

[16] *See, e.g.,* United States v. Oskowitz, 294 F. Supp. 2d 379, 384 (E.D.N.Y. 2003); Wolf v. Ramsey, 253 F. Supp. 2d 1323, 1347–48 (N.D. Ga. 2003); United States v. Hidalgo, 229 F. Supp. 2d 961, 968 (D. Ariz. 2002); United States v. Rutherford, 104 F. Supp. 2d 1190, 1194 (D. Neb. 2000); United States v. Van Wyk, 83 F. Supp. 2d 515, 524 (D.N.J. 2000); United States v. Santillan, No. 96–40169, 1201765, at *5 (N.D. Cal. Dec. 3, 1999); United States v. Hines, 55 F. Supp. 2d 62, 70–71 (D. Mass. 1999); United States v. McVeigh, 96–68, 1997 WL 47724 (D. Colo. Feb. 5, 1997).

[17] Villenuve v. Cash, 231 So. 3d 682, 685 (La. App. 1st Cir. 2017).

Defendant Glenn E. Diaz's Expert Witnesses (Doc. 124) is **DENIED IN PART** and **DEFERRED IN PART**.

New Orleans, Louisiana, this 5th day of April, 2023.

_____
**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**