UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION


VERSUS                                      NO: 21-179


GLENN E. DIAZ                               SECTION "H"
PETER J. "PETE" JENEVEIN
MARK S. GRELLE


## ORDER AND REASONS

Before the Court is Defendant Glenn Diaz's Motion to Question Foreperson and Juror ███ (Doc. 170). Oral argument was held on June 22, 2023. For the following reasons, the Motion is **DENIED**.


## BACKGROUND

Defendants Glenn Diaz, Peter Jenevein, and Mark Grelle were charged in a thirty-one-count Superseding Indictment with conspiracy to commit bank fraud, conspiracy to commit money laundering, and multiple counts of bank fraud related to interactions with First NBC Bank ("FNBC" or "the Bank").[1] Trial began on April 17, 2023. On April 25, 2023, the jury was charged and

---

[1] Doc. 98. Diaz and Jenevein were charged in each of the 31 counts of the superseding indictment, and Grelle was charged in 20 of the counts. Count 1 charged all three defendants with conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. In Count 2, Diaz, Jenevein, and Grelle were charged with conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). In Counts 3 through 31, Diaz and Jenevein were charged with bank fraud, in violation of 18 U.S.C. § 1344, and Grelle was also charged in Counts 3 to 6, 11, 14, 15, 18 to 25, and 28 to 30.

deliberations commenced. The Court responded to the jury's first question before excusing the jury for the day.[2]

During the second day of deliberations, the Court was informed of "commotion" occurring in the jury room.[3] The Court instructed the Court Security Officer to take the members of the jury outside for a 15-minute break. Once deliberations resumed, the Court received three separate notes from the jury.[4] One note from the Foreperson described a "hostile environment" within the jury room, explained that a particular juror requested to revisit counts that had been voted on and retract her votes, and asked for clarification on how the jury should move forward.[5] In another note, Juror ███ described herself as a holdout, explaining "I am the only person that is not agreeing with the rest of the jurors."[6] The third note asked whether the jury had "to use the signed checks as evidence."[7] After consulting Counsel, the Court responded with an *Allen* charge.[8]

Following another note and reinstruction on the bank fraud offense, the Court received the sixth and final note from the jury, stating that it "is not able, after much deliberation, to come to a unanimous vote on several of the charges for Mr. Diaz" and that the "jurors feel it will be impossible to get any other outcome on this matter."[9] Thereafter, the Court, with the parties' agreement, decided to have the jury return and confirm that it had reached a

---

[2] The jury's first question stated: "There is a debate about the signature for Glenn Diaz, is there anyway we can get his signature, or the PDF that shows his signature card from his JP Morgan Chase account?" After consulting the parties, the Court responded by advising the jury as to which exhibit contained the signature card and attaching an index for all of the exhibits. *See* Docs. 150, 150-3.

[3] Doc. 170-2 at 4–5.

[4] *Id.*

[5] Doc. 152-1 at 2.

[6] *Id.* at 3.

[7] *Id.* at 4.

[8] Doc. 170-2 at 13–14.

[9] Doc. 152-1 at 5.

partial verdict with respect to Defendant Diaz.[10] Once the jury returned, the following ensued:

> The Court: Has the jury unanimously reached a verdict as to Mr. Diaz?
> The Foreperson: No, ma'am.
> The Court: Has the jury reached a partial verdict as to Mr. Diaz?
> The Foreperson: No, ma'am.
> The Court: Is the jury hopelessly deadlocked as to the charges against Mr. Diaz?
> The Foreperson: I believe so.[11]

The Court then reviewed the verdict form and discovered that the jury had reached verdicts on some counts. As a result, the Court sought clarification from the Foreperson:

> The Court: Madam foreperson, I am looking at the verdict form, and it appears to be in proper order, but there are some charges that do indicate a verdict. Has the jury reached a unanimous verdict as to those counts that indicate?
> The Foreperson: Yes, ma'am.
> The Court: Okay. And those counts that do not have a check, are you telling me the jury is hopelessly deadlocked as to those individual counts?
> The Foreperson: Yes, ma'am.[12]

The deputy clerk published the verdict form for Defendant Diaz, noting the counts for which there was no verdict as "no answer."[13] Defendant Diaz was found guilty on ten counts and the Court declared a mistrial as to the remaining 21 counts. The deputy clerk then polled the jurors on Defendant

---

[10] Doc. 170-2 at 22.
[11] *Id.* at 23–24.
[12] *Id.*
[13] *Id.* at 24–28.

Diaz's verdict form, receiving oral confirmation from all 12 jurors that the verdict was accurately delivered.[14]

That evening, the Court received an unsolicited email from the Foreperson.[15] The Court subsequently held a telephone status conference to apprise the parties of this post-trial communication and ordered the email to be filed under seal in the record.[16]

Now before the Court is Defendant Diaz's Motion to Question Foreperson and Juror ███. The Government opposes.

## LAW AND ANALYSIS

Defendant Diaz moves to be allowed to question the Foreperson and Juror ███ regarding the validity of the verdict.

During an inquiry into the validity of a verdict, "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."[17] There are, however, three narrow exceptions to this rule. A juror may testify regarding whether (1) "extraneous prejudicial information was improperly brought to the jury's attention"; (2) "an outside influence was improperly brought to bear on any juror"; or (3) "a mistake was made in entering the verdict on the verdict form."[18] Defendant Diaz invokes the third exception in requesting this Court

---

[14] The Court read each of the three verdict forms separately for Defendants Diaz, Jenevein, and Grelle. Likewise, the jury was polled after each verdict form was delivered, for a total of three polls.

[15] *See* Exhibit A (filed under seal).

[16] Doc. 162.

[17] FED. R. EVID. 606(b)(1).

[18] FED. R. EVID. 606(b)(2). "In addition to Rule 606(b)'s limited exceptions, the Supreme Court has identified an exception to the 'no-impeachment rule' when there is evidence of a juror's racial animus during deliberations." United States v. Norwood, 982 F.3d 1032, 1056 (7th Cir. 2020) (citing Peña–Rodriguez v. Colorado, 580 U.S. 206, 225 (2017)).

to question the Foreperson and Juror ███ as to whether the verdict form reflects the jury's final verdict, or whether there has been an error. As such, he must make a "preliminary showing" of error to justify further investigation.[19]

According to Diaz, comments by the Foreperson and Juror ███ call into question whether the partial verdicts entered against Diaz represent the jury's final verdict, or whether the verdict form memorializes only Juror ███'s earlier but later recanted guilty votes. He specifically relies on: (1) the notes written by the Foreperson and Juror ███ during deliberations, describing Juror ███ as a holdout who retracted her earlier guilty votes on four counts; (2) the Foreperson's incorrect report to the Court that the jury was "hopelessly deadlocked as to the charges against Mr. Diaz"; and (3) the Foreperson's post-verdict email ████████████████████████████████████████

████████████████████████████████████████[20] Diaz maintains that these statements raise concerns as to whether the verdict delivered was that which was actually agreed upon. For the following reasons, the Court disagrees and finds that Diaz has failed to make a preliminary showing of error.

First, the notes written by the Foreperson and Juror ███ during deliberations are not inconsistent with the verdict delivered in open court. The Foreperson's final note explained that the jury was not able to reach unanimity "on several of the charges for Mr. Diaz," suggesting that the jury reached a partial verdict. And the verdict form reflected exactly that—10 guilty verdicts and 21 for which no decision was reached.[21] Although the Foreperson initially represented that the jury had not reached a partial verdict and was hopelessly deadlocked, further questioning revealed that the Foreperson misspoke:

---

[19] Maldonado v. Mo. Pac. Ry. Co., 798 F.2d 764, 769 (5th Cir. 1986).
[20] Doc. 170-1.
[21] *See* Doc. 153.

The Court: Madam foreperson, I am looking at the verdict form, and it appears to be in proper order, but there are some charges that do indicate a verdict. Has the jury reached a unanimous verdict as to those counts that indicate?

The Foreperson: Yes, ma'am.

The Court: Okay. And those counts that do not have a check, are you telling me the jury is hopelessly deadlocked as to those individual counts?

The Foreperson: Yes, ma'am.[22]

In light of this clarification, the Court may reasonably assume that the Foreperson simply misunderstood the meaning of a "partial verdict." Thus, the Court finds no indicia of error in either the notes received during deliberations or the Foreperson's initial, mistaken report that the jury was hopelessly deadlocked as to the charges against Diaz.

Next, nothing in the Foreperson's post-verdict email reveals that "a mistake was made in entering the verdict on the verdict form."[23] The Foreperson began by stating, "I just feel the need to communicate with you the issues we encountered . . . that lead to the outcome we ultimately had."[24] ██

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████[25]████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████[26]██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[22] Doc. 170-2 at 23–24.

[23] FED. R. EVID. 606(b)(2)(C).

[24] Doc. 162-1 at 1.

[25] *Id.*

[26] *Id.*

 [27] While Defendant Diaz urges the Court to construe these statements as evidence that the jury was unable to reach unanimity on *any* count of bank fraud, the Court disagrees with such a forced interpretation.

Indeed, the Court's interpretation aligns with the verdict ultimately delivered, which convicted Diaz on only some counts of bank fraud.

Finally, any doubt concerning the unanimity of the verdict was resolved by this Court polling the jury. Although Defendant correctly notes that the Fifth Circuit has approved further investigation even when a jury was polled, those cases involved two things noticeably lacking here: ambiguous polling and post-verdict evidence of error. In *United States v. Dotson*, for example, the jury returned a verdict convicting the defendant on ten counts, and the court informally polled the jury, receiving a nodding of all 12 heads.[28] After the jury was discharged, two jurors informed the court that the jury had actually agreed to acquit the defendant on the tenth count. After the court confirmed this result with the foreperson, it amended the verdict to reflect the acquittal. On appeal, the Fifth Circuit affirmed, explaining that the result was consistent with Rule 606(b)'s exception that juror testimony "is admissible to show that the verdict delivered was not that actually agreed upon."[29]

Similarly, in *Fox v. United States*, one juror remained silent during the court's polling and subsequently stated in an affidavit that he neither voted for the government nor answered affirmatively when his name was called during

---

[27] *Id.*
[28] 817 F.2d 1127, 1130 (5th Cir. 1987), *vacated in part on reh'g*, 821 F.2d 1034 (5th Cir. 1987).
[29] *Id.*

the poll.[30] Then, four other jurors executed affidavits verifying this account and noting that the jury believed a majority was sufficient to return a verdict. In reviewing a motion for new trial, the district court refused to consider the affidavits because it concluded that the juror's silence during polling should be construed as acquiescence to the verdict announced in open court and that considering the affidavits would violate the rule against allowing a juror to impeach their verdict.[31] The Fifth Circuit reversed, explaining that the affidavits demonstrated there was never any unanimity and the verdict purportedly returned was not the verdict of all 12 jurors.[32] The Fifth Circuit further admonished the district court for its assumption that the juror's silence on the poll should be construed as an affirmative response. According to the Circuit, it is "the duty of the district court in polling the jury to elicit a definite response and thereby eliminate all doubt as to whether the verdict of the jury is unanimous."[33]

Contrastingly, here, this Court's polling elicited unequivocal, affirmative responses from each juror, including Juror ███, "thereby eliminat[ing] all doubt as to whether the verdict of the jury [was] unanimous."[34] Diaz also has not presented persuasive post-verdict evidence indicating that the verdict form contained a transcription error or inaccurately reflected the will of the jury. Because Rule 606(b)(2)(C) is "not so broad as to allow a juror to contradict" previous statements made to the Court, "which unequivocally expressed agreement with the verdict," the Court declines to question the Foreperson and Juror ███.[35]

---

[30] 417 F.2d 84, 89 (5th Cir. 1969).
[31] *Id.*
[32] *Id.*
[33] *Id.* (citing Mattice v. Md. Casualty Co., 5 F.2d 233 (W.D. Wash. 1925)).
[34] *Fox*, 417 F.2d at 89 (citing Mattice, 5 F.2d at 233).
[35] United States v. Ortiz, 942 F.2d 903, 913 (5th Cir. 1991).

## CONCLUSION

For the foregoing reasons, Defendant Glenn Diaz's Motion to Question Foreperson and Juror ▮▮▮ (Doc. 170) is **DENIED**.

New Orleans, Louisiana, this 13th day of July, 2023.


**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**